**SO ORDERED.**

**SIGNED this 12th day of September, 2006.**

_____
LARRY E. KELLY
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JAMES CURTIS PETTIT AND | § | CASE NO. 05-63629-LEK |
| JO ANN BRISTOL, | § | |
| Debtors. | § | CHAPTER 13 |

**MEMORANDUM OPINION GRANTING**
**AMENDED MOTION OF CARMEN SAENZ AND ROBIN BENNETT, UNSECURED**
**CREDITORS, TO DISMISS DEBTORS' CHAPTER 13 CASE**
**WITH PREJUDICE FOR 180 DAYS**

Before the Court is the Amended Motion to Dismiss Debtors' Voluntary Chapter 13 Case filed by Carmen Saenz and Robin Bennett, Unsecured Creditors of the Debtors, filed on August 24, 2006 (#57).  Debtor Dr. James Curtis Pettit and wife, Jo Ann Bristol  filed a Response in opposition to said motion on August 30, 2006 (#63).  A hearing was held on these pleadings on September 6, 2006.  The two Debtors appeared in person and with counsel.  The two Movants appeared in person and with counsel.  Also, the Chapter 13 Trustee and his in-house counsel appeared.

By their motion, Movants seek dismissal of this bankruptcy case with prejudice to the Debtors' right to file an amended plan in this case.  Movants assert that this is the appropriate remedy, given Debtors' abuse of the bankruptcy system as shown by their failure to disclose

1

material information regarding assets and liabilities in the Debtors' sworn schedules filed in this case and filed in Debtors' prior two bankruptcy cases. Debtors respond to deny all of the Movants' allegations, asserting that all required information was provided in the schedules or to the Chapter 13 Trustee, and that all information was correct when provided.

This Court considered the testimony and exhibits proffered during the hearing and took judicial notice of the various pleadings and schedules filed in all three of these Debtors' bankruptcy cases. The Court orally stated Findings of Fact and Conclusions of Law into the record at the hearing, as permitted by Fed.R.Bank.P. 7052, made applicable to contested matters by Fed.R.Bank.P. 9014. In addition to those statements, which are incorporated herein, the Court makes the following additional findings, conclusions and comments.

<u>Background Facts</u>

1. These two Debtors filed three bankruptcy cases in a 15-month period in the bankruptcy court for the Western District of Texas, Waco Division. Debtors filed case number 04-61691 under Chapter 7 of the Bankruptcy Code on July 29, 2004 (hereinafter the "Chapter 7"). The Debtors received a discharge in the Chapter 7 case on November 4, 2004, and the case was closed November 22, 2004. By receiving a discharge, Debtors removed their personal liability for approximately $126,000 of credit card and personal loan obligations.

Approximately 3 months later, Dr. Pettit and wife filed another bankruptcy case under Chapter 13 of the Bankruptcy Code (hereinafter the "1st Chapter 13"), case number 05-60284. Debtors filed this case on February 11, 2005. It was dismissed on October 19, 2005 when the Debtors' voluntary motion to dismiss was granted.

Without waiting for an order of dismissal to be entered in the 1st Chapter 13 case, the Debtors initiated a second case filed under Chapter 13 of the Bankruptcy Code on October 16, 2005 (hereinafter the "2nd Chapter 13" or "Current Case"). This 2nd Chapter 13 case was filed on the last day for filing a case prior to the implementation of substantial amendments to the Bankruptcy Code, being the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and referred to as the BAPCPA amendments, which became effective on October 17, 2005.

2. Movants' key complaint is that Dr. Pettit and wife have failed to disclose a number of important facts concerning their financial situation in their schedules and statement of financial affairs, that such represent falsehoods made under oath, that these Debtors filed this 2nd Chapter

13 case in bad faith, and that the appropriate remedy is this case should be dismissed with prejudice.  The Court notes that in the 1st Chapter 13 case, the Debtors filed a proposed chapter 13 repayment plan and an amended chapter 13 repayment plan.  The Chapter 13 Trustee did not recommend confirmation of either plan.  The case was dismissed with no plan having been confirmed.  In the 2nd Chapter 13 case, the Chapter 13 Trustee has objected to confirmation of the Debtors' proposed chapter 13 plan, and no plan has yet been confirmed.

<u>Key Facts of the Current Case</u>

1.  This Court made a number of findings of fact in its oral recitation at the conclusion of the evidentiary hearing, which are incorporated herein.  Certain of those bear repeating or need additional clarification.

2.  In the Debtors' 1st Chapter 13 case, in their schedule of assets, they disclosed their residence as a home located at 3728 Chimney Ridge, Waco, Texas, which they claimed to be exempt as their homestead under the applicable sections of the Texas Property Code.  However, despite this claim, they apparently had entered into a contract to purchase a new home at 3721 Herwol Ave., Waco, Texas, sometime prior to October 16, 2005.  The existence of this contract was not disclosed in the Debtors' schedules of assets and liabilities nor statement of financial affairs filed in this Current Case.  In fact, this contract has not been disclosed in Debtors' recent amendments to their schedules and statement of financial affairs filed in the Current Case.

3.  On or about October 21, 2005, the Debtors "closed" on the contract and purchased the property on Herwol Avenue.  As a part of this purchase, the Debtors signed appropriate note obligations and lien documents to secure the purchase money loan. [See Movants' Exhibits Nos. 21,22].  Debtors did not seek court approval to purchase the property, despite it being a post-petition transaction in the Current Case which impacts the Debtors' financial situation and requires the expenditure of funds which would have property of this estate (money).  Debtors did not disclose this post-petition transaction until they filed a motion to incur secured debt nunc pro tunc, said motion being filed August 22, 2006, after Movants filed their motion to dismiss the case on August 2, 2006 and described the undisclosed purchase.  Debtors should have disclosed the existence of this contract on their Schedule G filed October 31, 2005 in the Current Case. Schedule G clearly states that debtors must "[d]escribe all executory contracts of any nature and all unexpired leases of real or personal property . . .. Provide the names and complete mailing

addresses of all other parties to each lease or contract described." All interests held as of the petition date of October 16, 2005 are to be listed.

4. The Debtors entered into a post-petition contract for improvements in the amount of $38,000 to this Herwol Avenue home. [See Movants' Exhibit No. 23]. Again, Debtors did not obtain court approval for their entering this liability, and they have not yet disclosed this post-petition transaction.

5. In addition to the above, testimony at the hearing disclosed that the Debtors incurred an additional $20,000 oral obligation for additional improvements and landscaping for the Herwol Avenue property. They testified that this debt has been paid in full. Such obligation was not approved, not disclosed, and the use of post-petition funds representing property of the estate was not disclosed nor approved by the Court.

6. Although the Debtors have amended their schedules and statement of financial affairs subsequent to Movants' filing of their motion to dismiss this case, at this date the schedules still do not list the Herwol Avenue property, the debt owed to the lender for its purchase price, the $38,000 improvement contract, or the $20,000 payment for more improvements. The Debtors have not amended their schedules to claim the Herwol property as their exempt homestead. home. In fact, in their Schedule C filed October 31, 2005, and as amended filed March 6, 2006, Debtors still claim the Chimney Ridge property as their exempt homestead. Their current plan of reorganization still proposes to pay the debt owed on the Chimney Ridge property with no mention of the Herwol Avenue obligations. To make matters worse, in their motion to incur debt nunc pro tunc, the Debtors first disclose they sold the Chimney Ridge house on May 10, 2006 for $240,000, another transaction made without court approval. They state that, and after paying the lienholder, they received $32,476.11 from the sales proceeds and then paid $33,352.44 to the IRS. No disclosure of this payment to the IRS has been made to the Court or Trustee or creditors.

7. A major source of contention at the evidentiary hearing was proper disclosure, or lack thereof, of a number of executory contracts of employment affecting each Debtor. Dr. Pettit does business as "Emergency Medicine Doctor of Waco, P.A." He testified that he operates as an independent contractor pursuant to contracts with various entities. However, on Schedule G filed in the Chapter 7 case, the schedule on which "all executory contracts of any nature" are to

4

be listed that existed as of the case filing date of July 29, 2004, Debtors failed to disclose contractual agreements between Dr. Pettit and Regent Care Center, despite the fact that he had been so employed since September 2003.  In the 1st Chapter 13 case, on Schedule G, Debtors again failed to list this contract and also failed to list contracts that Dr. Pettit had with Royal Manor, with whom he testified he has had an employment relationship since August 2004, and Vista Care, with whom he testified he has had an employment relationship since August 2004. Debtors also failed to list these contracts in the Current Case, even in the Amended Schedules filed August 5, 2006 after Movants filed their motion to dismiss this case and alleged various undisclosed sources of income.

8.  In order to confirm a chapter 13 plan, over objection of an unsecured creditor or the trustee, debtors must propose to pay their "projected disposable income" into the plan for the benefit of creditors.  See 11 U.S.C. § 1325(b).  In the Current Case, Debtors' Schedules I and J reflect net available income of $1784, and they proposed to pay into their plan of reorganization the sum of $1724. [Schedule J states there is $2784 available income, but the correct mathematical calculation from the information contained therein shows that to be an error and the amount of available funds is only $1784.]

9.  Schedule I is to reflect current income of a debtor, and Schedule J is to reflect current expenditures of a debtor.  After the Movants' motion to dismiss was filed, on August 5, 2006, Debtors filed amended schedules, including amended Schedules I and J, which now show they have $4061.64 available for distribution on a monthly basis to their creditors.  The accuracy of this information is questionable, given the following problems.  First, in the Schedule I filed in the 1st Chapter 13 case on February 28, 2005 and in the original Schedule I filed October 31, 2005 in the Current Case, Jo Ann Bristol showed that her average monthly income was $1,000. [See Movants' Exhibit No. 9, Schedule I].  She now discloses in her amended Schedule I, filed August 5, 2006 in the Current Case, that her average monthly income is $3,832.61. [See Movants' Exhibit No.10, Schedule I].  She now attaches an estimate of her monthly business expenses, many of are problematic.  For example, Ms. Bristol includes $500 per month for the purchase of professional books, but when questioned at the hearing about this expense, as support for the amount, Ms. Bristol could only state the books she uses in her profession are expensive.  To support this expense, these books are personal property and should be listed on

5

Schedule B [where personal property is listed] with an estimated value, and, as with all schedules, sworn to under oath for accuracy.  Debtors' Schedule B, as originally filed and as amended, contains no listing of any professional books or any other books for that matter, and it should, if she actually spends approximately $6,000 per year on books.  Ms. Bristol includes a monthly expense of $200 for "business cards, letterhead, etc."  This appears extremely excessive as an "average monthly expense" to be considered in a budget, equating to $12,000 for letterhead and business cards as an expense over the 60 month potential duration of a chapter 13 plan.  Ms. Bristol testified that she pays $400 per month for "coffee/cokes/cleaning supplies" as her share of such expenses, despite the fact that she testified the other persons in the office drink 10 or more sodas per day.  She lists $600 per month for office supplies/fax/copier/phones/shredder and another $200 per month for telephone/DSL/cell phone.  She provided no information during testimony to justify why these two expenses appear so high, such as whether she was the purchaser of the subject office equipment or why the two phone bills appear to total to such a large amount.  When testifying, Ms. Bristol did not provide any hard data of any bills nor did she provide any detail or procedure on how she derived her "estimated" monthly expenses, such as whether she took actual bills and calculated an estimated monthly amount.  These expenses are not reasonable in amounts and have no credible basis.

10.  Ms. Bristol testified that she operates as an independent contractor.  In the Current Case, on the original Schedule G filed October 31, 2005, she disclosed no executory agreements.  However, on amended Schedule G filed August 5, 2006, after Movants' motion to dismiss pointed out Ms. Bristol's various sources of undisclosed income, she now lists she has, as a "contract type," a "business lease" with Elizabeth Timmons, with its "terms" as "$250/month" and that "Debtor's Interest" is that of a "lessee" for "office space at 900 Austin Ave., Suite 1103, in Waco, Texas."  Over a year after it began, Ms. Bristol now discloses her "contractual arrangement." At the hearing, she testified she entered this arrangement with Barbara Timmons on or about August 2005.  The information provided on amended Schedule G about the nature of the executory agreement gives the reader the impression that Ms. Bristol is a lessee of an office space– information completely at odds with the actual nature of the relationship as shown by her testimony at the evidentiary hearing and by her income and expense lists provided with amended Schedules I and J.  Ms. Bristol testified that Ms. Timmons has the contracts with agencies such

6

as Child Protective Services (CPS), and that these contracts provide Ms. Bristol with "clients" to see as a social worker.  She testified that she works as an independent contractor for Ms. Timmons.  Ms. Bristol's "detailed" business expenses do not even mention "rent" in the disclosed amount of $250 per month, although she discloses approximately $3030 in expenses which indicates a substantially different relationship with Ms. Timmons than that of "lessee." [Ms. Bristol's schedule of "estimated monthly business expenses" is inaccurate as to the "Total" amount listed of $3,080 because the actual total for the items listed is $3,980.]  Ms. Bristol does more than just rent space from Ms. Timmons, in fact, she appears to share many of the company's business expenses.  None of this "employment" or office sharing relationship is disclosed in the schedules.

<u>Eligibility for Chapter 13 Relief</u>

Although not specifically raised by Movants' pleadings, the testimony at the evidentiary hearing, without objection, disclosed two key facts.

1.  In the schedules filed in the 1st Chapter 13 case and the 2nd Chapter 13 case, the Debtors have stated that they owe the IRS the sum of $70,000 as a liquidated, non-contingent and undisputed liability. [See Movants Exhibit Nos. 6, 9].

2.  In the schedules filed in the Chapter 7 case, Debtors disclose in their amended Statement of Financial Affairs filed October 19, 2004, in answer to Question No. 4, that a judgment for a wrongful death claim was taken against Dr. Pettit in 2001, in Cause No. 99-2717-4 from the 170th District Court of McLennan County, Texas, styled Carolyn and Jimmy Dowell v. Providence Health Center, DePaul Center, and Dr. James Pettit, and that the case is on appeal to the Texas Tenth Court of Appeals. [See Movants' Exhibit No. 2].  This judgment is shown in amended Schedule F, unsecured creditors, in the amount of $600,000 and is not stated to be liquidated, non-contingent or undisputed, only the notation of "judgment on appeal" is made. [See Movants' Exhibit No. 4, Schedule F].

In their two chapter 13 cases, Debtors change the amount they disclose as owed to the Dowells.  In the 1st Chapter 13 case, in Schedule F filed February 28, 2005, Debtors list this judgment as being in the amount of $160,000, and they now list the debt as disputed.  [See Movants' Exhibit No. 6, Schedule F].  In the Current Case (the 2nd Chapter 13 case), in Schedule F filed October 31, 2005, the judgment is listed in the amount of $160,000 but now is

7

listed as disputed, contingent and unliquidated. [See Movants' Exhibit No. 9, Schedule F].   The Debtors have given no logical reason why they now "dispute" the previously entered judgment. Although the judgment is on appeal, a properly entered state court money judgment is deemed to be liquidated notwithstanding an appeal.  *See In re Vidal*, 2004 WL 2656893 (S.D. Fla 2004)

Of note, in the schedules and statement of financial affairs filed in the Current Case, Debtors list the Movants as unsecured creditors in Schedule F.  Debtors list an "unknown amount" as owed to each Movant.  They list the unknown amount as a disputed, unliquidated, and contingent debt which are based upon a lawsuit filed by Movants on September 19, 2005 against multiple defendants, one being Dr. Pettit, currently pending in the 19th Judicial District of McLennan County, Texas, Cause 2005-3013-1.

3.  Movants' Exhibit 16 is the Abstract of said Judgment in favor of the Dowells.  The judgment was entered on September 28, 2001 against Dr. Pettit in favor of Jimmy Dowell and Carolyn Dowell, and on behalf of the estate of Jonathan Dowell in the 170th District Court of McLennan County, Texas.  The original judgment was for $208,920.54 along with court costs of $1486.54 and carries a post-petition interest rate of 10% per year, compounded.  A quick estimate would place the judgment amount, including then accrued interest, as of the Current Case's filing date of October 16, 2005, at about $320,000.  This debt may be disputed but the amount is not unliquidated and no reason for its being contingent has been given.  This unsecured debt, as disclosed to be due and owing to the Dowells, places the Debtors above the eligibility amount of $307,675 to be debtors under chapter 13.  *See* 11 U.S.C. § 109(g).[1]  When added to the $70,000 in unsecured debt claimed owed to the IRS, and which debt is not shown to be contingent, unliquidated or disputed, Debtors are certainly over the eligibility limit for unsecured debt.  The Court notes that the IRS has not filed a proof of claim for $70,000 in this case.  But the issue is the accuracy of information the Debtors provide to the court and to the creditors.  For the Debtors to argue eligibility, they have to refute the sworn statements contained in their schedules for the amount owed to the IRS, not only in the 1st Chapter 13 schedules, but also in the original and the amended schedules in the Current Case.

---

[1]On April 1, 2004, the limit on noncontingent, liquidated unsecured debts that a chapter 13 debtor can owe at the time of the bankruptcy filing was adjusted upward to $307,675.  *See* 11 U.S.C. § 104 (modifying 11 U.S.C. § 109(e), effective April 1, 2004).  This chapter 13 case was filed after April 1, 2004, and the limits have not been increased since, so the $307,675 limit on the total of unsecured debts applies to the Debtors.

<u>Conclusions</u>

1.  Section 1307(c) authorizes a bankruptcy court to dismiss a chapter 13 case, for cause, if certain listed factors have occurred.  This Court believes and finds that "cause,"as that term is used in 11 U.S.C. §1307(c), includes the concept of a debtor's "good faith" in how he or she has acted in relation to their bankruptcy case and in complying with the duties placed upon him or her by the Bankruptcy Code in exchange for their receiving a discharge of debt.  Here, the Debtors have failed to comply with the duty to file accurate and complete schedules and a statement of financial affairs, such documents sworn to under oath as to the truth of the information contained therein, and carrying the penalty of perjury.  This duty is placed upon the Debtors by 11 U.S.C. § 521, requiring that a debtor file accurate schedules of assets and liabilities as of the date of the filing of their bankruptcy case and answer all questions contained in the statement of financial affairs.  Further, pursuant to Bankruptcy Rule 1007, debtors are to supplement those schedules as new information arises.  The Debtors' failure to file accurate schedules and a statement of financial affairs comprises "cause" as stated in 11 U.S.C. §1307(c).

2.  If this was a chapter 7 bankruptcy case, the failure of the debtors to file accurate responses in answer to the queries in the official forms for schedules and for the statement of financial affairs could lead to the complete denial of their discharge.  *See* 11 U.S.C. § 727(a)(4). To establish a false oath, for denial of discharge purposes, a movant must show that: (1) debtor made a statement under oath, (2) the statement was false, (3) debtor knew the statement was false, (4) debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case.  *See Cadle Company v. Pratt (In re Pratt)*  411 F.3d 561, 565 (5th Cir. 2005); *see also, In re Cordray*, __B.R.__, 2006 WL 2385512 (Bankr. N.D. Tex. 2006).

3.  Materiality is an important element.  A false oath is "material" and sufficient to bar discharge "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."  *In re Pratt,* 411 F.3d at 566 (quoting *In re Beaubouef,* 966 F2d 174, 178 5th Cir. 1992) (debtor's failure to list ownership in a company that the debtor considered worthless was determined a material omission by the court).  The *Cadle* and *Beaubouef* courts stated that a debtor cannot defend a claim of material omission by asserting the omitted item had no value and no creditors were harmed by said omission.  Instead, the materiality of the omission depends upon the

omitted item's relationship to: the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property.  *Cadle*, 411 F.3d at 566-67; *Beaubouef*, 966 F.2d at 177-78.

4.  Movants' motion to dismiss this case forced the Debtors to disclose many facts, all of which are material.  In August 2006, the Debtors disclosed their purchase of the Herwol Avenue house in their motion to incur debt nunc pro tunc, likely a year after Debtors entered the purchase contract, constituting a material omitted fact.  In August 2006 and in testimony, the Debtors revealed executory agreements regarding their employment; these are material omissions of fact.  In August 2006, the Debtors amended their schedules to list contracts with Regent Care, Vista Care and Royal Manor as sources of income for Dr. Pettit.  However, the availability of correct information somewhere in the bankruptcy schedules at some later time does not cure the fact that the Debtors failed to answer completely the specific inquiries made in the schedules and the statement of financial affairs, especially given that this is the Debtors' third bankruptcy case and such information was not provided in the two prior cases.  *See generally In re Tully,* 818 F2d 106, 110-111( 1st Cir. 1987); *In re Mitchell,* 102 Fed. Appx. 860 (5th Cir. 2004); and *In re Tomasek,* 175 Fed. Appx. 662 (5th Cir. 2006).

5.  The Debtors' schedules and statement of financial affairs are all signed under oath and penalty of perjury.  *See In re Armstrong,* 320 B.R. 97, 107 (Bankr. N.D. Tex. 2005); *In re Solomon,* 277 B.R. 706, 710 (Bankr. E.D. Tex 2002).  The lack of proper information relating to the contract of purchase for the Herwol Avenue property and the lack of proper disclosure of the Debtors' many executory contracts were all omissions or false statements made under oath.  They were all material facts in this case.

6.  The element of "fraudulent intent" may be proved by showing either actual intent to deceive or a reckless indifference for the truth.  *In re Sholdra,* 249 F3d 380 (5th Cir. 2001); *In re Beaubouef,* 966 F.2d at 178;  *In re Mitchell*, 102 Fed. Appx. 860 (5th Cir. 2004).  *See also, Hatton v. Spencer (In re Hatton),* 204 B.R. 477, 482-83 (E.D. Va.1997) (mere "glance over" schedules constituted reckless disregard for truth); *Mosley v. Sims* (In re Sims), 148 B.R. 553, 557 (Bankr.E.D. Ark.1992) (same); *Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 433 (Bankr. M.D. La.1983) ("Individually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a

pattern of reckless and cavalier disregard for the truth.") (citing *Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808-09 (Bkrtcy.D.Mass.1981)); *Aetna Ins. Co. v. Nazarian (In re Nazarian)*, 18 B.R. 143, 147 (Bankr.D.Md.1982) (even if haste with which schedules were prepared could excuse inaccuracies and omissions, debtor's failure to amend them promptly was reckless indifference to truth).

These Debtors have each evidenced a cavalier attitude towards the accuracy of the information contained in their schedules. This attitude is reflected in the lack of accurate information contained in schedules in all three of their bankruptcy cases. The cumulative effect satisfies the finding of "fraudulent intent." *In re Sholdra,* 249 F3d. at 382. Debtors ignore the fact that property they acquire after the commencement of the case, including earnings from services, are "property of the estate" and possibly are to be made available to creditors. *See* 11 U.S.C. § 1306(a). Thus, their undisclosed sources of income and inflated business expenses directly affects income available to pay creditors. Their purchase of the Herwol property, their executing new debt to buy and improve the Herwol property, the payment of $20,00 in cash on more improvements to the Herwol property, and their payment of sales proceeds to the IRS all constitute uses of property of the estate.

7. Although not specifically raised by the Trustee or any party in interest, the Court raises issue of eligibility because of the information contained the schedules and other information brought to the attention of the Court, without objection by the Debtors. *See e.g. In re Nikoloutsos,* 199 F.3d 233 (5th Cir. 2000) (in part reversing decision of bankruptcy court in allowing debtor's conversion to chapter 13 when information about a final judgment was brought to bankruptcy court's attention and the dollar amount of the judgment made the debtor ineligible for filing under chapter 13)

For the reasons incorporated herein, and for the above reasons, the Debtors have provided this Court with false information in response to several questions in their schedules and in their statement of financial affairs. Additionally, such false information was made under oath, was material to these proceedings, and was made with reckless indifference to the truth. As such it was made fraudulently. All of these factors constitute "cause" within the meaning of 11 U.S.C. §1307(c) and authorize dismissal of the Debtors' bankruptcy petition.

Further, the Debtors have acquired property pursuant to a contract which is not disclosed,

11

have incurred purchase money and improvement money debts which were not authorized, and have expended $20,000 of property of the estate to improve such property without approval of the Court.  These actions constitute "cause" within the meaning of 11 U.S.C. §1307(c) and authorize dismissal of the Debtors' bankruptcy petition.

The Debtors concealed the proper amount of their earnings from the Court and the creditors by omitting material information relating to their various contracts of employment. This information was not corrected until a motion to dismiss this case was filed.  The materiality of such information is shown by the fact that the Debtors' reorganization plan in this current chapter 13 case provides that the sum of $1,724 is to be paid to creditors, whereas the amended schedules filed in response to the motion to dismiss now show the Debtors have at least $4,064.61 available to repay their creditors. [See Movants' Exhibit No. 9, 10, Schedule J].

Cause for dismissal is present.  Pursuant to 11 U.S.C. § 349, dismissal should be with prejudice to the right of either Debtor to refile a bankruptcy petition for a period of 180 days following the entry of the order of dismissal.

This conclusion will be evidenced by a separate order of even date herewith.

# # #